**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TREVOR DELLNO KEETH,<br><br>                    Plaintiff,<br><br>    v.<br><br>JAMES R. JARMUSCH, and FOCUS<br>FEATURES, LLC,<br><br>                    Defendants. | Civil Action No. 1:25-cv-07221-KPF |

---

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

---

**FOX ROTHSCHILD LLP**
101 Park Avenue, Suite 1700
New York, NY 10178
(212) 878-7900

10250 Constellation Blvd.,
Suite 900
Los Angeles, CA 90067
(310) 598-4150

*Counsel for Defendants*

On the Brief:
    David Aronoff, admitted *pro hac vice*
    Joshua Bornstein, admitted *pro hac vice*
    Andrew Ramstad, Bar No. 5929583

i

187873223

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT....................................................................................................... 2

    A.    THE OPPOSITION FAILS TO ESTABLISH ACCESS ...................................... 2

    B.    THE OPPOSITION FAILS TO PLAUSIBLY ESTABLISH SUBSTANTIAL
         SIMILARITY BETWEEN THE WORKS ........................................................... 4

        1.    The Opposition Impermissibly Scrambles the Relevant Works ................. 4

        2.    Plaintiff's "Selection, Coordination, and Arrangement" Theory Fails
            on Multiple Grounds ................................................................................ 5

        3.    Plaintiff's List of Twenty-Six Random Similarities is Deficient................ 7

III.  DISMISSAL WITH PREJUDICE IS WARRANTED....................................... 11

IV.   CONCLUSION................................................................................................. 12

187873223

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cantor v. NYP Holdings, Inc.*,
    51 F. Supp. 2d 309 (S.D.N.Y. 1999)...........................................................................................6

*Capcom Co. v. MKR Grp., Inc.*,
    No. C08-0904, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008).....................................6, 10, 11

*Castro v. Cusack*,
    No. 15-CV-6714, 2019 WL 3385218 (E.D.N.Y. July 26, 2019)................................................3

*Clanton v. UMG Recordings, Inc.*,
    556 F. Supp. 3d 322 (S.D.N.Y. 2021)..................................................................................3, 11

*Flynn v. Surnow*,
    No. CV 02-9058-JFW(PLAx), 2003 WL 23411877 (C.D. Cal. Dec. 9, 2003) .........................6

*Hord v. Jackson*,
    281 F. Supp. 3d 417 (S.D.N.Y. 2017)...............................................................................5, 6, 7

*Jones v. Atl. Records*,
    No. 22-CV-893 (ALC), 2023 WL 5577282 (S.D.N.Y. Aug. 29, 2023) ...................................11

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003)...........................................................................................2, 3, 4

*Kaye v. Cartoon Network, Inc.*,
    297 F. Supp. 3d 362 (S.D.N.Y. 2017)....................................................................................11

*Klauber Bros., Inc. v. URBN US Retail LLC*,
    No. 1:21-CV-4526-GHW, 2023 WL 1818472 (S.D.N.Y. Feb. 8, 2023)...............................2, 3

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995).......................................................................................................5

*Liebowitz v. Bandshell Artist Mgmt.*,
    6 F.4th 267,273 (2d Cir. 2021) ................................................................................................5

*Mayers v. Racina*,
    No. 23-CV-5183 (MKV), 2024 WL 3729020 (S.D.N.Y. Aug. 7, 2024)....................................5

*Seals-McClellan v. Dreamworks, Inc.*,
    120 F. App'x 3 (9th Cir. 2004) .................................................................................................3

*Sheldon Abend Revocable Tr. v. Spielberg*,
748 F. Supp. 2d 200 (S.D.N.Y. 2010)..........................................................................5, 6, 7, 8

*Structured Asset Sales, LLC v. Sheeran*,
120 F.4th 1066 (2d Cir. 2024) ...................................................................................5, 6

*Wager v. Littell*,
549 F. App'x 32 (2d Cir. 2014) .......................................................................................3

*Walker v. Time Life Films, Inc.*,
615 F. Supp. 430 (S.D.N.Y. 1985) ..................................................................................5

*Williams v. Crichton*,
84 F.3d 581 (2d Cir. 1996)..........................................................................................7, 8

## Other Authorities

Melville B. Nimmer & David Nimmer, "Striking Similarity,"
4 *Nimmer on Copyright* § 13D.07 (2026)...................................................................3

Thomas E. Simmons, *What Zombies Can Teach Law Students: Popular Text
Inclusion in Law and Literature*, 66 MERCER L. REV. 729 (2015) ..................................8, 9, 10

187873223

## I.    INTRODUCTION

The Opposition Memorandum ("Opposition" or "Opp.") (Dkt. 54) of plaintiff Trevor Dellno Keeth ("Plaintiff") fails to reanimate his moribund claims.  Because Plaintiff's "Corrected" Third Amended Complaint ("TAC") (Dkt. 49) is fatally deficient, this lawsuit should be dismissed.

Regarding the element of access, the Opposition admits that Plaintiff was required to plead that Defendants had a "reasonable opportunity" (Opp. at 21) to copy his screenplay *Dead* ("DEAD" or "Plaintiff's Work").  But Plaintiff fails to do so.  Instead, the Opposition rests on an *ipse dixit* conclusion that "[a] screenplay placed into festival and industry-database channels in 2003 and again in 2016 pleads a reasonable opportunity to encounter it."  *Id.*  This conclusion, however, is based solely on improper speculation and conjecture since Plaintiff pleads no facts showing defendants Jim Jarmusch ("Jarmusch") or Focus Features ("Focus") (collectively, "Defendants") had a nexus with the third-party film festivals and databases to which Plaintiff submitted DEAD giving them a "reasonable opportunity" to read and copy the script.

Regarding the element of substantial similarity, the Opposition does not properly compare DEAD with Defendants' 2019 feature film, *The Dead Don't Die* ("TDDD" or "Defendants' Work") through the eyes of a "more discerning observer" as to the copyright-protected elements of the works.  Instead, Plaintiff has compiled a random assortment of twenty-six purported "similarities" that impermissibly consist of unprotected material, including ideas, *scènes à faire*, and stock conventions of the zombie-film genre.  These cherry-picked "similarities" do not amount to a substantially similar "selection and arrangement."  Rather, they exist, if at all, only at an impermissibly high level of abstraction and are largely based on an early pre-production draft of the script for TDDD (rather than Defendants' completed motion picture, as the law requires) and the 2016 draft of DEAD that was not registered with the U.S. Copyright Office.  When the works genuinely at issue are compared properly, they are substantially ***dis***similar, not similar.

1

187873223

Accordingly, the Opposition confirms rather than undermines Defendants' Motion to Dismiss ("Motion") (Dkt. 52).  Thus, the Motion should be granted and the TAC should be dismissed with prejudice.  Plaintiff's lifeless claims should be laid to rest.

## II.    ARGUMENT

### A.    THE OPPOSITION FAILS TO ESTABLISH ACCESS

The Opposition attempts to repackage Plaintiff's access theory as one of "direct exposure" through film festivals and an online database.  *See* Opp. at 21-22.  But this label does not cure the fundamental defects of Plaintiff's access theory – *i.e.*, the TAC pleads no "reasonable opportunity" by Defendants to copy DEAD since "access cannot be based on mere 'speculation or conjecture.'" *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citations omitted).

Specifically, Plaintiff alleges he submitted his original version of DEAD to unidentified festivals in 2003, resubmitted the revised draft to the 2016 Austin Film Festival where Jarmusch allegedly was "premiering another film," and uploaded the work to The Black List.  TAC ¶ 3. These are precisely the type of conjectural allegations courts have found insufficient because they amount to nothing more than a "generic list of means by which any infringer *might* gain access to [other works]."  *Klauber Bros., Inc. v. URBN US Retail LLC*, No. 1:21-CV-4526-GHW, 2023 WL 1818472, at *6 (S.D.N.Y. Feb. 8, 2023) (emphasis added).  Plaintiff does not allege that Jarmusch was a reader, judge, reviewer, or recipient of any film festival script submissions.  He identifies no individual connected with any festival or the Black List who reviewed DEAD and shared it with Defendants.  And Plaintiff alleges no connection whatsoever between Focus and Plaintiff's Work.

The Opposition argues that Defendants' cited authorities concern "intermediary" access theories, whereas Plaintiff supposedly advances a theory of "direct exposure."  Opp. at 21-22.  This purported distinction is inaccurate.  "Direct exposure" requires factual allegations that a defendant received the plaintiff's work directly.  Here, no facts are alleged supporting a plausible inference

2

that DEAD was sent "directly" to any of Defendants.  The mere fact that a screenplay was available through a third-party source that a defendant "might" have accessed – *e.g.*, an intermediary such as the script submission library of a film festival or an online database of scripts – does not establish access.  *See Klauber Bros., Inc.*, 2023 WL 1818472, at *6.  Thus, the facts that DEAD was posted on an internet database, the Black List, and was sent to a few film festivals is insufficient to show access.  *See Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 328 (S.D.N.Y. 2021).

Further, Plaintiff's improper extrinsic evidence in a supplemental declaration and exhibits regarding Screamfest listings and alleged 2004 inquiries fail to rectify these deficiencies.  *See* Opp. at 23-24; Dkt. 53-1, Dkt. 54-1.  They each concern third-parties wholly unconnected to Defendants and are offered, by Plaintiff's own admission, "not as proof of any Defendant's access."  Opp. at 24.  Dissemination to unrelated third-parties does not create an inference that *Defendants* had a reasonable opportunity to copy DEAD.  *See Wager v. Littell*, 549 F. App'x 32, 33-34 (2d Cir. 2014); *Castro v. Cusack*, No. 15-CV-6714, 2019 WL 3385218, at *7 (E.D.N.Y. July 26, 2019).[1]

Nor can Plaintiff reanimate his access theory by invoking "striking similarity."  Opp. at 21. Striking similarity exists only "where the works in question are 'so strikingly similar as to preclude the possibility of independent creation.'"  *Jorgensen*, 351 F.3d at 56 (citation omitted); *Seals-McClellan v. Dreamworks, Inc.*, 120 F. App'x 3 (9th Cir. 2004) ("To show a striking similarity between works, a plaintiff must produce evidence that the accused work *could not possibly* have been the result of independent creation.") (emphasis in original); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13D.07 (2026) ("At base, 'striking similarity' simply means that,

---

[1] Notably, the 2016 Screamfest reader coverage (Dkt. 53-2) observed that the screenplay's core premise, a Southern town dealing with a zombie takeover, was "not particularly unique or compelling."

187873223

in human experience, it is virtually impossible that the two works could have been independently created.").  Plaintiff cannot meet this standard.

Plaintiff's Opposition illustrates the weakness of his theory.  The only example of purported striking similarity cited in the Opposition is that "[t]he registered 2003 deposit already staffs the small-town squad with a junior member – 'Brady' (Dkt. 1-5 at 4) – and Defendants' work likewise staffs its station with a trio that includes a junior newcomer, named 'Ronnie' in the released film."  Opp. at 22.  This purported "similarity" is not even *substantial* (it is trivial) and in no way "preclude[s] the possibility of independent creation."  *Jorgensen*, 351 F.3d at 56.

In short, the TAC fails to plausibly allege without speculation and conjecture Defendants had a reasonable opportunity to read and copy DEAD.[2]

**B.      THE OPPOSITION FAILS TO PLAUSIBLY ESTABLISH SUBSTANTIAL SIMILARITY BETWEEN THE WORKS**

**1.      The Opposition Impermissibly Scrambles the Relevant Works**

Regarding the element of substantial similarity, the Opposition's scattershot methodology further underscores the defects of Plaintiff's TAC.  In compiling his cherry-picked list of purported similarities, Plaintiff relies interchangeably on three different works: (1) his copyright-registered 2003 screenplay DEAD (Dkt. 1-5 & Motion, Ex. B), (2) the unregistered 2016 revision of DEAD (Dkt. 1-6), and (3) a pre-production draft of Jarmusch's TDDD screenplay (Dkt. 17) that differs in certain details from the completed motion picture TDDD.  Moreover, Plaintiff largely ignores the filmed version of TDDD released to the public.  Motion, Ex. A.  This approach is improper.

As an initial matter, because the TAC alleges only that the 2003 version of DEAD (Dkt. 1-

---

[2] Plaintiff argues that the Court may not consider footnote 4 of Defendants' Motion because Defendants did not serve a Local Rule 12.1 notice. Opp. at 22.  The argument misses the mark.  The websites linked are publicly available materials subject to judicial notice and were supplied for mere illustrative purposes.

187873223

5 & Motion, Ex. B) was registered for copyright, Plaintiff's allegations that TDDD is supposedly substantially similar to expression contained in the unregistered 2016 version of DEAD (Dkt. 1-6) are irrelevant. *See, e.g., Liebowitz v. Bandshell Artist Mgmt.,* 6 F.4th 267,273 n.4 (2d Cir. 2021); *Mayers v. Racina,* No. 23-CV-5183 (MKV), 2024 WL 3729020, at *4 (S.D.N.Y. Aug. 7, 2024).

Likewise, Plaintiff also errs by focusing on an early draft of TDDD's screenplay that was registered in the U.S. Copyright Office (Dkt. 17) rather than the completed film (Motion, Ex. A). Courts must evaluate substantial similarity by comparing works in the "final form as presented to the public." *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 fn. 2 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986). Accordingly, courts have recognized "earlier drafts of a book, manuscript, or screenplay are irrelevant" to the substantial similarity inquiry. *Sheldon Abend Revocable Tr. v. Spielberg*, 748 F. Supp. 2d 200, 205 fn. 4 (S.D.N.Y. 2010) ("*Sheldon*").

Nevertheless, even under Plaintiff's improper mix-and-match approach, an actual comparison of the works defeats Plaintiff's claim – as described in more detail below.

### 2. Plaintiff's "Selection, Coordination, and Arrangement" Theory Fails on Multiple Grounds

The Opposition invokes *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003-4 (2d Cir. 1995), for the proposition that his particular "selection, coordination, and arrangement" of otherwise unprotectable elements in DEAD may itself be protectable and has been infringed by TDDD. Opp. at 6-8. That principle does not assist Plaintiff here for at least three reasons.

#### a. Plaintiff Cannot Satisfy the "More Discerning Observer" Test

By invoking a selection, coordination, and arrangement theory, Plaintiff concedes the "more discerning observer" test applies here. *Structured Asset Sales, LLC v. Sheeran*, 120 F.4th 1066, 1079 (2d Cir. 2024) ("In a selection-and-arrangement case, [the] typical ordinary-observer test must be 'more discerning.'"); *see also Hord v. Jackson*, 281 F. Supp. 3d 417, 423-27 (S.D.N.Y.

187873223

2017) (applying "more discerning observer" test in granting dismissal under Fed. R. Civ. P. 12(c)); *Sheldon*, 748 F. Supp. 2d at 204. Thus, this Court must determine if, after extracting the unprotectible elements of DEAD from consideration, "the protectible elements [of DEAD], standing alone, are substantially similar" to TDDD. *Structured Asset Sales, LLC*, 120 F.4th at 1078-79; *see also Hord*, 281 F. Supp. 3d at 423-27. Here, the purported "selection, organization and arrangement" identified in the Opposition consists almost entirely of standard zombie-genre conventions – *e.g.*, zombies rising from graves and police armed with weapons to battle them. But under the "more discerning observer" test, the Court must disregard virtually all of these purported similarities as they arise from unprotected ideas, *scènes à faire*, and stock conventions of the zombie-film genre. *Sheldon*, 748 F. Supp. 2d at 204; *Capcom Co. v. MKR Grp., Inc.*, No. C08-0904, 2008 WL 4661479, at *10 (N.D. Cal. Oct. 20, 2008) (holding that humans battling zombies during a zombie outbreak is an unprotectable concept).

### b. The Claim of "Selection, Coordination, and Arrangement" Infringement Cannot be Satisfied by Random Similarities.

Further, by Plaintiff's own admission, many of the alleged "corresponding beats" have been "repositioned," that is, they do not appear in the same pattern or sequence in TDDD. Opp. at 11. Plaintiff nonetheless asserts that "[d]iscrete copied elements scattered through an accused work remain actionable." *Id*. at 12. These assertions, however, are fatal to Plaintiff's selection, coordination, and arrangement theory – since a protectable arrangement requires that the specific ordering be both original and copied. *Cantor v. NYP Holdings, Inc.*, 51 F. Supp. 2d 309, 313 (S.D.N.Y. 1999) ("Defendants have not infringed plaintiff's copyright in his compilation because they have not copied his selection and arrangement, even if they utilized some of the same underlying photos and captions."); *Flynn v. Surnow*, No. CV 02-9058-JFW(PLAx), 2003 WL 23411877, *9 (C.D. Cal. Dec. 9, 2003) (rejecting a selection and arrangement claim where the

6

187873223

similarities between works were "randomly scattered throughout the works and ha[d] no concrete pattern ... in common"). Plaintiff cannot plausibly argue that the "arrangement" of elements in DEAD was copied while conceding that the elements appear in a different order in TDDD.

### c. The Divergent "Total Concept and Feel" of the Works Precludes "Selection, Coordination, and Arrangement" Infringement

The selection, coordination, and arrangement of elements in a work is manifested by the "total concept and feel" of the work. *Hord*, 281 F. Supp. 3d at 427 ("The 'total concept and feel' of a work is comprised of the way an author 'selected, coordinated and arranged the elements of his or her work.'") (quoting *Feist Publ'ns, Inc., v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991); *accord Sheldon*, 748 F. Supp. 2d at 210. But here, the total concept and feel of TDDD differs completely from DEAD. TDDD is an intentionally bleak, self-aware satire using zombies as an allegory for the dangers of environmental disregard and unchecked consumerism; and it ends with humanity defeated by the zombies. DEAD, by contrast, is a traditional horror-comedy with a linear plot emphasizing community, redemption, heroism, and even romance – culminating in a hopeful resolution in which the zombies have been quelled. Because the "total concept and feel" of the works is so distinct (even after examining Plaintiff's twenty-six points of "similarity" discussed below), the "selection, coordination, and arrangement" of elements in the works is not substantially similar. *Hord*, 281 F. Supp. 3d at 427; *Sheldon*, 748 F. Supp. 2d at 210.

### 3. Plaintiff's List of Twenty-Six Random Similarities is Deficient

The Opposition presents a hodgepodge of twenty-six cherry-picked random similarities that evaporate upon scrutiny. *See* Opp. at 12-20. The Second Circuit has expressly rejected Plaintiff's approach. "Such lists are inherently subjective and unreliable, particularly where the list emphasizes random similarities scattered throughout the works." *Williams v. Crichton,* 84 F.3d 581, 590 (2d Cir. 1996). This "scattershot approach" cannot establish substantial similarity

7

as it fails to answer whether a more discerning observer would regard the works as substantially similar after disregarding unprotected elements. *Id.*; *Sheldon*, 748 F. Supp. 2d at 205 fn. 4. Dismissal is appropriate if "the dissimilarities between two works exceed the similarities" or any shared elements are "of small import quantitatively or qualitatively." *Sheldon*, 748 F. Supp. 2d at 205.

Each purported similarity claimed in the Opposition consists of an unprotectable idea, stock element, *scènes à faire*, genre convention, mischaracterization, or insubstantial triviality. Moreover, Plaintiff's random list exposes no common pattern or sequence of events:

Item #1 – Population number (Opp. at 12) – This "similarity" is *de minimis* and is based on the unregistered 2016 DEAD script and the preliminary draft of TDDD.  The actual film TDDD features a sign listing Centerville's population at "738."  *See* Ex. A at TC: 00:09:30.

Item #2 – Dead arising from graves (Opp. at 13) – This "similarity" is a *scènes à faire*/stock element in the context of a zombie film.  *See* Thomas E. Simmons, *What Zombies Can Teach Law Students: Popular Text Inclusion in Law and Literature*, 66 MERCER L. REV. 729, 735 (2015) (hereinafter, "*Simmons*") ("zombies are re-animated corpses").

Item #3 – Officers in uniforms with shotguns (Opp. at 13) – This "similarity" is a mischaracterization.  The officers in DEAD wear "black padded leather armor."  No such gear exists in TDDD.  Also, shotguns are a *scènes à faire*/stock element for police and sheriffs.

Item #4 – The Police/Sheriff's Station (Opp. at 13) – This "similarity" is a *scènes à faire*/stock element for works featuring the police or sheriffs who need a workplace.

Item #5 – Medical Professional (Opp. at 14) – This "similarity" is a mischaracterization. Zelda Winston, the Scottish, samurai-sword-wielding mortician in TDDD (who is also an alien) is nothing like Doc Diedrich, the town doctor/disguised zombie in DEAD.  Zelda uses makeup on

8

corpses as a mortician; Diedrich uses makeup to hide he is a zombie.

Item #6 – Biting chicken legs (Opp. at 14) – There is no protected expression in characters eating chicken legs.  This also is a similarity of idea, not expression.

Item #7 – Sheriff gets a warning call (Opp. at 14) – It is a generic *scènes à faire*/stock element for law officers to receive warning calls of problems requiring their attention.

Item #8 – Vomiting (Opp. at 15) – It is a *scènes à faire*/stock element for law enforcement officers to vomit upon encountering a disgusting zombie crime scene.  Here, the officers and crime scenes are different and distinct.  Also, this is similarity of idea, not expression.

Item #9 – Zombies in burial clothing (Opp. at 15) – It is a standard *scènes à faire*/stock element to depict zombies in their burial clothing, since "zombies are re-animated corpses." *Simmons*, *supra*, at 735.  This also is a similarity of idea, not expression.

Item #10 – Zombies playing with food (Opp. at 15) – This "similarity" is a mischaracterization.  In TDDD the zombies want coffee; in DEAD a zombie throws a salt shaker.

Item #11 – Town drunks (Opp. at 16) – Small-town drunks are an unprotected stock element of works set in small towns.  Here, these drunks are dissimilar.  The filmed version of TDDD (but not the script) includes a female town drunk, "Mallory O'Brien," (portrayed by actress Carol Kane) who prefers chardonnay.  This also is a similarity of idea, not expression.

Item #12 – The "thesis line" (Opp. at 16) – It is a *scènes à faire*/stock element for characters in a zombie film to note the dead are not staying dead.  It is the core premise of the entire genre.

Item #13 – Secret rooms of medical professionals (Opp. at 16) – This "similarity" is a mischaracterization.  The workplace of Zelda Winston, the Scottish, samurai-sword-wielding mortician in TDDD (who is an alien but not a medical professional) is nothing like the hidden research lair of Doc Diedrich, the town doctor who is a zombie in disguise.

9

Item #14 – Inhuman swordsmen (Opp. at 17) – This "similarity" is a mischaracterization. TDDD's mortician, Zelda Winston (as noted above), is entirely distinguishable from Captain Kephart, a former police commander who still kills zombies although he is undead himself. Also, samurai swords are an unprotected *scènes à faire*/stock element given zombies can only be killed by "a traumatic blow to the head." *Simmons*, *supra*, fn. 1, at 735.

Item #15 – Face being removed (Opp. at 17) – This claimed "similarity" is a mischaracterization. A punch to the face is dissimilar to a shotgun blast.

Item #16 – Two carefully aimed shots (Opp. at 18) – It is an unprotected *scènes à faire*/stock element for humans to fight zombies by shooting at them.

Item #17 – Doors (Opp. at 18) – It is an unprotected *scènes à faire*/stock element for doors to become crowded with zombies during a zombie infestation. *See Capcom Co., Ltd.*, *supra*, 2008 WL 4661479 at *2, 6-10. This also is a similarity of idea, not expression.

Item #18 – Final plan (Opp. at 18) – This "similarity" of idea mischaracterizes the works. In TDDD, unlike DEAD, the characters have no plan to defeat the zombies.

Item #19 – The severed arm (Opp. at 18) – Severed limbs are a *scènes à faire*/stock element in zombie works, since zombies are "re-animated corpses hungering for human flesh." *Simmons*, *supra*, at 735. This is also a similarity of idea, not expression.

Item #20 – Sitting in silence (Opp at 18) – There is no protected expression for characters to sit in silence. This also is a similarity of idea, not expression.

Item #21 – Swords again (Opp. at 18) – See Response to Item #14, above. This also is a similarity of idea, not expression.

Item #22 – Severed heads (Opp. at 19) – In the context of zombie works in which samurai swords are in use, severed heads are a *scènes à faire*/stock element. *See* Response to Item #14,

10

above.  This also is a similarity of ideas, not expression.

Item #23 – Zombie pile (Opp. at 19) – It is a *scènes à faire*/stock element for characters to be swarmed by a pile of zombies while battling a zombie infestation.  *Capcom Co., Ltd.*, 2008 WL 4661479 at *2, 6-10.  This also is a similarity of ideas, not expression.

Item #24 – Moonlight (Opp. at 19) – There is no protected expression for scenes to be set in moonlight. This also is a similarity of ideas, not expression.

Item #25 – Key toss (Opp. at 20) – There is no protected expression for the keys to a vehicle to be tossed to a character. This also is a similarity of ideas, not expression.

Item #26 – Inhuman departures (Opp. at 20) – This "similarity" is a mischaracterization. The departure via a space saucer of TDDD's mortician Zelda Winston, is entirely distinguishable from Captain Kephart's departure by motorcycle.  The concept of departures generally is a similarity of ideas, not expression.

In short, the Opposition fails to breathe life into Plaintiff's fatally deficient substantial similarity allegations.  Thus, this Motion should be granted and the TAC should be dismissed.

### III.    DISMISSAL WITH PREJUDICE IS WARRANTED

No amount of repleading can change the content of DEAD and TDDD or create protectable similarity where none exists.  Leave to amend would be futile because the lack of substantial similarity turns on the works themselves, not the artfulness of the pleading.  Thus, dismissal with prejudice is appropriate. *Jones v. Atl. Records*, No. 22-CV-893 (ALC), 2023 WL 5577282, at *8 (S.D.N.Y. Aug. 29, 2023) (collecting cases); *see Clanton*, 556 F. Supp. 3d at 334-35; *Kaye v. Cartoon Network, Inc.*, 297 F. Supp. 3d 362, 371-71 (S.D.N.Y. 2017).

///

///

11

187873223

## IV.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant the

Motion and dismiss Plaintiff's TAC with prejudice.

Respectfully submitted,

Dated: July 24, 2026

FOX ROTHSCHILD LLP

/s/ *David Aronoff*_____
David Aronoff, Esq., *Admitted Pro Hac Vice*
Josh Bornstein, Esq., *Admitted Pro Hac Vice*
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Tel:  (310) 228-2916
Fax: (310) 556-9828
daronoff@foxrothschild.com
jbornstein@foxrothschild.com

-and-

Andrew Ramstad, Esq., Bar No. 5929583
101 Park Ave 17th floor
New York, NY 10178
Tel:  (212) 878-7900
Fax: (212) 692-0940
aramstad@foxrothschild.com

*Attorneys for Defendants*

12

187873223

13

## WORD COUNT CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)

I, David Aronoff, certify pursuant to Local Rule 7.1(c) that the foregoing brief complies with the word count limitations under the Local Rules and this Court's Standing Order.  The brief is 3,499 words, inclusive of all footnotes and exclusive of the brief's caption, table of contents, table of authorities, and signature block.  I have relied on the Microsoft Word's word count software to prepare this certification.

/s/ *David Aronoff*_____
David Aronoff, Esq.

13

187873223

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Reply Brief in Support of Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint was served upon Plaintiff via the Court's CM/ECF system.  In addition, copies of the authorities cited herein that were not previously cited in Defendants' Motion to Dismiss or Plaintiff's Opposition were separately transmitted to Plaintiff by email at the email address on file with the Court.

Trevor Dellno Keeth
Email: trevor.keeth@2tokens.com

/s/ *David Aronoff*
David Aronoff, Esq.

Dated: July 24, 2026

14

187873223